**CHEVRON OIL COMPANY, Appellant,**

v.

**Vernon C. HOWELL et al., Appellees.**

**No. 16806.**

Court of Civil Appeals of Texas.

Dallas.

July 22, 1966.

Rehearing Denied Oct. 7, 1966.

Henderson, Bryant & Wolfe, Sherman, Baker, Botts, Shepherd & Coates and John F. Heard, Houston, for appellant.

Carrington, Johnson & Stephens and Robert L. Blumenthal, Dallas, for appellees.

DIXON, Chief Justice.

Appellant Chevron Oil Company, hereinafter called Chevron, has appealed from a temporary injunction restraining it from proceeding further with the drilling of a directional oil well.

Most of the facts are undisputed and they present an unusual situation. In March 1966 Chevron began operations to drill the well from a location in Grayson County, Texas on the west bank of Lake Texoma. The hole is slanted in a northeasterly direction so that it may be bottomed in a lease owned by appellant in an area in the State of Oklahoma beneath the waters of Lake Texoma.

Appellee Vernon C. Howell is the owner of a five-year agriculture and grazing lease, revocable at will, dated January 1, 1965 covering the surface rights of a large tract including an area of approximately 189 acres where appellant began its drilling operation. This lease was granted to appellee Howell by the United States, acting by the Secretary of the Army, pursuant to Title 10, United States Code, Section 2667.

Appellee Magna Oil Corporation, hereinafter called Magna, is the owner of an exclusive oil, gas and mineral lease dated February 15, 1965 underlying the 189 acres above mentioned. Magna's lease is from the Hutchinson family, former owners of the fee title to the tract, who retained oil, gas and mineral rights following the taking through condemnation of the surface rights by the United States.

Appellee Howell did not give permission to Chevron to come onto his surface lease to start drilling its oil well. Neither did appellee Magna give Chevron permission to penetrate the subsurface oil, gas and mineral lease owned by Magna. In fact, negotiations had ended by their refusing to give such permission.

Appellant claims that it has the right to start its drilling operation on appellee Howell's leased surface land and the right to penetrate appellee Magna's subsurface oil and gas lease pursuant to a license granted to it by the United States, acting through the Corps of Engineers, as set forth in two letters.

The first letter, dated February 10, 1966, is addressed to S. J. Mathews, Jr., appellant's Division Production Superintendent, and is signed in behalf of the Corps of Engineers by David A. Heims, Chief, Real Estate Division. We quote from this letter:

> *"Insofar as the interests of the United States as surface owner are concerned we have no objection to the location specified.*
>
> *"This approval of location is not to be construed as approval of any of your proposed operations as to directional drilling to a bottomhole location approximately 3270 feet North 64° East with a vertical depth of approximately 3800 feet at that point, and or interstate production.* Since your proposal is to drill in Texas and produce from Oklahoma, we are furnishing a copy of this letter to the Oklahoma Corporation Commission.
>
> "Mr. Vernon C. Howell, surface tenant, previously advised us that he had no objection to the usage of the surface for the drilling of a directional well but he pointed out that *Magna Oil Corporation owns an oil and gas lease covering the land where the proposed surface location will be. We specifically make no determination as to whether or not your operations will conflict with Magna.*
>
> "All storage tanks and pits shall be erected above elevation 645 feet, mean sea level, and protected by fire walls or dikes of sufficient capacity to protect the reservoir from oil pollution." (Emphasis ours.)

The second letter, dated April 1, 1966, is addressed to the Tulsa District Corps of Engineers, attention Mr. Heims, and is signed by S. J. Mathews, Jr. This letter, after referring to the letter of February 10, 1966, states, "It was necessary for us to make a slight change in the surface location due to terrain difficulties." The letter then describes the new location and requests approval. In the lower left corner of the letter is the notation, "Above revised surface location is hereby approved. Date: 5 April 1966 [Signed] David A. Heims."

Appellee Howell testified that on March 18, 1966 the foreman of his ranch informed him that someone had made a location for a well on Howell's government lease. On March 20, 1966 Howell went to the scene of the operations. That evening he contacted Chevron's superintendent, S. J. Mathews, Jr., by telephone, protesting Chevron's activities. On March 21, 1966 Magna and Howell followed up Howell's verbal protest by letter and telegram. Nevertheless Chevron continued its drilling operations.

This suit was filed April 7, 1966 by appellees Howell and Magna. Appellee Howell is a vice-president of Magna. Following a hearing on April 13, 1966 the trial court granted a temporary injunction restraining Chevron from (1) "conducting any drilling operations on premises leased to Plaintiffs by the Secretary of the Army and by Charles M. Hutchinson, et al * * *"; (2) "coming across the surface of the land" in question, "or trespassing thereon"; and (3) "puncturing, penetrating, drilling into, maintaining holes in, or otherwise conducting activities in subsurface formations of the land * * *."

At the time appellee Howell talked to Mathews on March 20, 1966 Chevron had spent about $1,500 preparing to drill. By April 18, 1966, when the injunction was granted, it had spent about $50,000. By that time the drilling operation had reached a depth of 4300 feet. The total intended depth was 5400 feet.

In three points on appeal Chevron asserts that the trial court (1) erred in granting Howell an injunction because his surface lease requires him to grant ingress and

egress to licensees of the United States, the surface owner; (2) erred in granting Magna an injunction because Chevron's directional drilling operation did not in any way interfere with Magna's rights under its mineral lease; and (3) abused its discretion in granting a temporary injunction because there is no competent evidence of damage either to the surface or to any oil, gas or mineral formation under the surface.

■ We see no merit in appellant's points. We do not contrue the two letters of February 10, 1966 and April 1, 1966 (with new location approval dated April 5, 1966) as a license for appellant to go onto and into appellees' leased properties without appellees' permission.

It is to be borne in mind that when the United States condemned land to create Lake Texoma, it did not take over the whole property. The oil, gas and mineral rights were retained by the Hutchinson family, grantors of the exclusive oil, gas and mineral lease to Magna. And both the lease to Howell of the surface rights to the 189 acres involved and the exclusive oil and gas lease to Magna were executed long prior to the signing of the alleged license letters.

It is true that the lease of the surface rights to Howell expressly provides that the leased area shall be subject to free public use for hunting and fishing. And that it also provides for lessee Howell to permit ingress and egress to persons holding mineral interests "on land covered by this lease", or to utility companies or others "to whom the Government has granted an easement or license interest."

However, we do not believe that a grant of a license to appellant was effectuated by the above recitals or by the statement in the letter of February 10, 1966 that *"Insofar as the interests of the United States as surface owner are concerned we have no objection to the location specified."* (Emphasis ours.) To the contrary, we think it is apparent that other paragraphs in the letter make it plain that the United States was not approving appellant's operations as to directional drilling, or interstate production, and was not making a determination which might conflict with Magna's rights.

■ We do not agree with appellant's contention that the court's order should be reversed because there was no competent evidence of damage to either the surface or to the oil, gas and mineral formation under the surface.

The testimony of appellant's own witness, its superintendent, was to the effect that to drill the hole is to damage the formation— "any time you drill into something there is bound to be some damage." And certainly if appellant were to build "storage tanks and pits * * * protected by fire walls * * * of sufficient capacity to protect the reservoir from oil pollution" it cannot reasonably be said that such installations would not interfere with and do damage to appellee Howell as holder of the agriculture and grazing lease to the surface.

■ Moreover, our Supreme Court has held that continuous trespasses to mining property are irreparable and the legal remedy is inadequate, hence equity is quick to restrain the trespass. Hastings Oil Co. v. Texas Co., 149 Tex. 416, 234 S.W.2d 389, 398. See also Boiles v. City of Abilene, 276 S.W.2d 922, 925 (Tex.Civ.App. writ ref.); Ft. Worth Stockyards Co. v. Brown, 161 S.W.2d 549 (Tex.Civ.App., no writ hist.); and Gulf C. & S. F. Ry Co. v. Puckett, 82 S.W. 662 (Tex.Civ.App., no writ hist.). In Boiles v. City of Abilene, supra, it is held that equity will intervene to avoid the necessity of the filing of a multiplicity of damage suits by the aggrieved party in cases involving continuing trespasses.

Appellant's points on appeal are overruled.

The judgment of the trial court is affirmed.