

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-13-00614-CV

Kathryne **VAUSE**,
Appellant

v.

**LIBERTY INSURANCE CORPORATION** and Justin A. Smith,
Appellees

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 07-2231-CV
Honorable William Old, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:     Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  November 26, 2014

AFFIRMED

This is an appeal from a summary judgment rendered in favor of appellees, Liberty

Insurance Corp. and Justin A. Smith.  In the underlying lawsuit, appellant, Kathryn Vause, sued

appellees for violations of the Texas Insurance Code, violations of the Texas Labor Code, and for

violations of the Texas Civil Practice and Remedies Code ("the DTPA") arising from appellees'

denial of appellant's claim for an October 16, 2006, knee injury she sustained while at work.

**BACKGROUND**

There is no dispute that appellant slipped and fell while working at a Chili's Restaurant in Seguin, Texas. Appellant alleged she twisted her left knee when her foot caught on a mat. The restaurant's workers' compensation carrier, Liberty Insurance Corp. ("Liberty") investigated appellant's claim, and Liberty's adjuster, Justin Smith, later contacted appellant's employer and physician to obtain information about the fall and any injuries sustained as a result of the fall.

On October 30, 2006, Liberty issued a "Notice of Disputed Issues" contesting whether appellant suffered an injury entitling her to workers' compensation benefits. Appellant began physical therapy. On November 15, 2006, Liberty issued a "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits," which stated that Liberty "denies that the injured worker suffered an on-the-job injury with Chili's on 10/16/06. Liberty Mutual contends that there is no objective evidence, medical or otherwise, to support a work-related injury. The employee has not sustained an on-the-job injury while performing her normal job duties for the employer nor while furthering the business affairs of her employer." On January 3, 2007, appellant's physician requested preauthorization for appellant's knee surgery. On January 9, 2007, Liberty authorized the surgery, but reserved its right to contest compensability.

Because appellant disputed Liberty's interpretation of its obligations under the policy, the parties engaged in a Benefit Review Conference to mediate resolution of whether (1) appellant sustained a compensable injury and (2) whether she had a disability resulting from a compensable injury, and if so, for what period of time. When the parties could not agree, they proceeded to a Contested Case Hearing, following which an order was entered concluding appellant had suffered a compensable injury and disability, and directing Liberty to pay appellant benefits. On April 27, 2007, appellant's physician again requested a preauthorization for appellant's knee surgery, which was authorized on April 30, 2007. Appellant's surgery took place on June 7, 2007.

Appellant later sued appellees alleging that their delay in paying for her medical care and other benefits subjected her to "significant economic impact, worry, distress, and continuing economic and physical damage." Appellant alleged violations of the Texas Insurance Code, the Texas Labor Code, and the DTPA. The trial court later granted appellees' motion for summary judgment on appellant's claims.

## STANDARD OF REVIEW

We first address the type of motion appellees filed because appellees' motion does not state whether it is a traditional or a no-evidence motion for summary judgment, or both. Appellees provided only the standard of review for a traditional motion for summary judgment, and they twice asserted they were "entitled to a traditional summary judgment." However, appellees also contended there was no evidence of a misrepresentation, citing specifically to each element of appellant's claims under the Insurance Code and DTPA.[1] Although the Texas Supreme Court has approved of filing combination summary judgment motions, the better practice is to clearly delineate which type of summary judgment is being sought. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004). In this case, we construe the grounds asserted by appellees as intended to assert a "no-evidence" ground only if it specifically states that there is "no evidence," not more than a "scintilla of evidence," or legally insufficient evidence to support a specified element of the claim. We construe grounds lacking those words as "traditional" grounds for summary judgment.

A party may move for both traditional and no-evidence summary judgment. *Binur*, 135 S.W.3d at 650. We review the grant of summary judgment, both traditional and no-evidence, de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Strandberg v.*

---

[1] Appellant did not specially except to the motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous.").

*Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.). A party moving for traditional summary judgment has the burden of establishing that no material fact issue exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

A movant is entitled to no-evidence summary judgment if, "[a]fter adequate time for discovery, . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The trial court "must grant" the motion unless the non-movant produces summary judgment evidence to raise a genuine issue of material fact on the issues the movant has raised. TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Analysis is made more difficult when, as here, it appears the movant may be relying on its own summary judgment evidence yet is asserting there is no evidence on a particular element of the non-movant's case. Ordinarily when a party moves for both a traditional and no-evidence summary judgment and the trial court grants the motion without stating its grounds, we first review the trial court's decision as to the no-evidence summary judgment. *Ridgway*, 135 S.W.3d at 600. If the non-movant failed to produce more than a scintilla of evidence under the no-evidence

standard, there is no need to analyze whether the movant's summary judgment proof satisfied the burden related to traditional summary judgment motions. *Id.*

## TEXAS INSURANCE CODE VIOLATIONS

In her petition, appellant alleged appellees misrepresented the insurance policy by: "(1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; [and] (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact . . . ." *See* TEX. INS. CODE ANN. § 541.061(1-3). (West 2009). The Insurance Code defines "knowingly" to mean "actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages under Subchapter D is based. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness." *Id.* § 541.002(1). In their motion for summary judgment, appellees alleged there was legally insufficient evidence to support a finding that they misrepresented the policy under either subsections (1), (2), or (3) of section 541.061, and section 541.002(1).

Before analyzing whether appellant produced more than a scintilla of evidence under the no-evidence standard, a discussion of the Supreme Court's opinion on which both parties extensively rely may be appropriate because the claims made in *Texas Mutual Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012), are somewhat similar to the background in this case. In *Ruttiger*, on June 21, 2004, Timothy Ruttiger reported to his supervisor that he was injured while carrying pipe. He went to the University of Texas Medical Branch at Galveston where he was diagnosed as having bilateral inguinal hernias. Later that day he went to his employer's office and filled out a TWCC–1 form, reporting he had been injured on the job. Ruttiger was scheduled for hernia repair surgery to be performed on July 14, 2004.

When Ruttiger's employer's workers' compensation carrier, Texas Mutual Insurance Company ("TMIC"), received written notice that Ruttiger was claiming an injury, it initiated temporary income benefit payments and began investigating the claim. As part of the investigation process, another employee told TMIC's adjuster, Audie Culbert, that Ruttiger had been at a softball tournament the weekend before the alleged injury and had come to work on the morning of the incident with a limp. Culbert later reported that one of Ruttiger's co-workers informed her Ruttiger was injured at the softball game and "bragged about getting it paid by workers' comp." The vice president of the company said that Ruttiger "wasn't 100 percent" when he arrived at work on the day of the incident and he "never got a straight story" on how Ruttiger was injured.

On July 11, Ruttiger's doctor notified him that TMIC refused to pay for the hernia surgery. Ruttiger testified he then called Culbert who told him the claim was denied because the hernias resulted from Ruttiger playing softball and were not work-related. On July 12, 2004, TMIC filed a "Notice of Refused or Disputed Claim" with the Texas Workers' Compensation Commission and discontinued temporary income benefit payments after having sent one check. Two days after he was notified that TMIC refused to pay for his surgery, Ruttiger hired a lawyer to help with his claim. Approximately two months later, Ruttiger's lawyer contacted TMIC and asked for a copy of the notice of disputed claim. After another month, Ruttiger's lawyer requested a benefit review conference. At that conference, Ruttiger and TMIC entered into a benefit dispute agreement in which they agreed that (1) Ruttiger suffered a compensable injury on June 21, 2004; (2) he did not have disability from June 22, 2004 through August 22, 2004; and (3) he had disability from August 23, 2004 "to the present." Following approval of the agreement, TMIC paid temporary income benefits for the agreed period of past disability and re-initiated weekly benefits. TMIC also paid for Ruttiger's surgery and other medical expenses related to his hernias. Ruttiger reached

maximum medical improvement on August 1, 2005, and was assigned a one-percent impairment rating.

On June 16, 2005, while his claim was still pending and before he had reached maximum medical improvement, Ruttiger sued TMIC and Culbert for violations of article 21.21 of the Insurance Code, breach of the common law duty of good faith and fair dealing, and violations of the DTPA. Ruttiger did not claim that TMIC failed to fulfill the agreement it entered into or that TMIC did not properly pay income and medical benefits after the agreement. Rather, he claimed that TMIC's delay in paying temporary income benefits and not agreeing to pay for surgery until January 2005 damaged his credit, worsened his hernias, and caused mental anguish, physical impairment, and pain and suffering over and above what he would have suffered if TMIC had timely accepted liability and provided benefits. His allegations as to Insurance Code violations were that TMIC (1) failed to adopt and implement reasonable standards for promptly investigating claims, (2) refused to pay his claim without having conducted a reasonable investigation, (3) failed to promptly provide a reasonable explanation for denying his claim, (4) failed to attempt to promptly and fairly settle the claim when liability was reasonably clear, and (5) misrepresented the insurance policy to him. He also asserted that TMIC's Insurance Code violations authorized recovery under the DTPA. Ruttiger's common law claim was that TMIC breached its duty to properly investigate his claim and denied necessary medical care and other benefits.

The case was tried to a jury, which found that TMIC (1) breached its duty of good faith and fair dealing, (2) committed unfair and deceptive acts or practices that were a producing cause of damages to Ruttiger, and (3) knowingly engaged in the unfair and deceptive acts. The jury found damages for past physical impairment, past and future pain and suffering, past and future loss of credit, past mental anguish, "additional" damages, and attorney's fees. The trial court rendered judgment based on the Insurance Code findings, but also provided in its judgment that if

the Insurance Code theory of liability failed on appeal, Ruttiger was entitled to recover for TMIC's

breach of the duty of good faith and fair dealing and under the DTPA. *Id.* at 435.

On appeal to the Texas Supreme Court, the Court analyzed whether the Workers'

Compensation Act eliminated Ruttiger's claim under Insurance Code section 541.061.[2] *Id.* at 445.

The Court held as follows:

> [S]ection 541.061 does not specify that it applies in the context of settling claims. *Section 541.061 applies to the misrepresentation of an insurance policy*, but because it does not evidence intent that it be applied in regard to settling claims, it is not at odds with the dispute resolution process of the workers' compensation system.
>
> Nevertheless, we agree with TMIC that there is legally insufficient evidence to support a finding that it misrepresented its policy. TMIC denied Ruttiger's claim on the basis that he was not injured on the job. Ruttiger does not point to any untrue statement made by TMIC regarding the policy or any statement about the policy that misled him. The dispute between Ruttiger and TMIC was over whether Ruttiger's claim was factually within the policy's terms—whether he was injured on the job. And the parties' . . . agreement did not resolve any issues regarding TMIC's policy terms. It resolved whether Ruttiger was injured in the course of his employment with A & H. While we disagree with TMIC's assertion that Ruttiger's claim under section 541.061 is precluded by the Act, we agree with its legal sufficiency challenge to the evidence supporting a finding based on section 541.061.

*Id.* at 446 (emphasis added).

On appeal here, appellant distinguishes her case from *Ruttiger* by arguing that whether

Ruttiger was injured created a genuine issue of material fact precluding summary judgment, but

here, there is no factual dispute regarding appellees' denials of her claim. Appellant contends

appellees misrepresented the terms of the policy and the laws of Texas by telling her that her policy

made her ineligible for workers' compensation benefits and that she was not entitled to temporary

---

[2] Before addressing section 541.061, the Supreme Court dispensed with Ruttiger's other claims. The Court held that a claimant cannot recover damages under section 541.060 from a workers' compensation insurer for unfair claims settlement practices. 381 S.W.3d at 445. The Court also held that amendments to the Workers' Compensation Act eliminated the need for a cause of action for breach of the common law duty of good faith and fair dealing against workers' compensation insurers. *Id.* at 446.

total disability.  Appellant contends this representation was false because "the policy directly holds that a person injured at work, like [her], is entitled to temporary total disability."  Appellant contends appellees denied her claim without conducting any investigation and without any medial or other evidence indicating her claim was not compensable.  As evidence sufficient to raise a fact issue, appellant relies on the following.

Appellant first points to the denials themselves.  The October 30, 2006, "Notice of Disputed Issue(s) and Refusal to Pay" states as follows:

> Liberty Mutual disputes that the injured worker is entitled to temporary total disability benefits at this time.  There is no evidence, medical or otherwise, to support the injured worker is off work or is entitled to temporary total disability.

The November 15, 2006, "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits" states as follows:

> Liberty Mutual denies that the injured worker suffered an on-the-job injury with Chili's on 10/16/06.  Liberty Mutual contends that there is no objective evidence, medical or otherwise, to support a work-related injury.  The employee has not sustained an on-the-job injury while performing her normal job duties for the employer nor while furthering the business affairs of her employer.

As evidence that Liberty's representations were false, appellant relies on the February 13, 2007, "Decision and Order" from the contested case hearing, which stated, in pertinent part, that appellant was injured in the course and scope of her employment; the injury was a cause of appellant's inability to obtain and retain employment at wages equivalent to her pre-injury wage; and appellant's injury was compensable and she sustained disability from October 18, 2006 through the date of the hearing.

Appellant also points to her treating physician's deposition wherein he testified as follows:

Q.    Doctor, two more things I want to show you.  Exhibit 6 is a copy of the October 30, 2006 denial issued by Liberty Insurance and Justin Smith.  In this document, the adjuster or insurance company writes "There's no evidence, medical or otherwise, to support that the injured worker is off work." Do you see that?

A.   I do.

Q.   Based on your treatment of [appellant], is that true or false?

A.   That's false.

Q.   How sure are you that what we're seeing here — what is written in this denial is false?

A.   I'm sure in medical probability.

Q.   Any — Was there — Are you aware of — Have you seen any evidence that would say the opposite, that [appellant] really was supposed to be back at work — 100 percent back to work October 30, 2006?

A.   No.

Q.   I'll hand you what I've marked as Exhibit 7, Doctor.  Denial filed November 15, 2006 by Justin Smith and Liberty Insurance: do you see that?

A.   I do.

Q.   And what this denial says is Liberty Mutual denies that the injured worker suffered an injury on the job with Chili's on October 16th, 2006.  Is that true or false based on your opinion?

A.   That's false.

Finally, appellant relies on Smith's deposition testimony as evidence that he was responsible for being truthful regarding the denial of her claim:

Q.   Did you have personal responsibility for adjusting [appellant's] Workers' Compensation Claim?

A.   I had personal responsibility for [appellant's] claim.

. . .

Q.   Exhibit 6 in front of you, the October 30th, 2006 denial, that's what you filed?

A.   Yes, sir.

Q.   You take responsibility for filing the October 30, 2006 denial?

A.   I take responsibility for filing the October 30th dispute[.]

Q.   You're obligated to be absolutely 100 percent truthful in filing the October 30, 2006 dispute[?]

A.   It was my — I initiated it, yes.

Q.   And it's never appropriate to make false statements in a document like this October 30, 2006 denial?

A.   It's not appropriate to make false statements at all.

Q.   You always have to be truthful to the DWC, the doctors, the claimant?

A.   Yes, sir.

. . .

Q.   Exhibit 7 is a document you caused to be filed?

A.   I — yes, sir.

Q.   You take personal responsibility for the November 15, 2006 denial?

A.    Absolutely, I do.
Q.    And you're absolutely obligated to be truthful, to make truthful statements in the denial?
A.    Yes, sir.

Other than this evidence, appellant does not point to any statements or actions by appellees that she contends constitute untrue statements about or failure to disclose something about the insurance policy. The October 30 and November 15 notices specified that Liberty disputed whether appellant suffered a compensable injury. The issues at the contested hearing were (1) whether appellant sustained a compensable injury on October 16, 2006, and (2) whether she had a disability resulting from a compensable injury, and if so, for what period of time. These are questions that deal with whether a claim falls within the scope of coverage, and not with an interpretation of the policy itself. *See* TEX. INS. CODE § 541.061 (creating liability for an insurer that misrepresents policy coverage); *see also Texas Mut. Ins. Co. v. Morris*, 383 S.W.3d 146, 150 (Tex. 2012) (holding misrepresentation must be about what policy says or what policy covers to recover under section 541.061); *Ruttiger*, 381 S.W.3d at 446 (holding insufficient evidence existed to support section 541.061 claim when plaintiff showed no evidence of an "untrue statement made by [insured] regarding the policy or any statement about the policy that misled [the plaintiff]").

A section 541.061 claim requires evidence that the insurer denied coverage under circumstances that it previously had represented would be covered. *See* TEX. INS. CODE § 541.051 (creating liability for an insurer that misrepresents the terms, benefits, or advantages of a policy); *see Morris*, 383 S.W.3d at 150 (dispute between Morris and TMIC was extent of Morris's injury, not what the policy said or whether it covered Morris's disc problems if they were related to his previous back strain); *see also Effinger v. Cambridge Integrated Servs. Group*, 478 Fed. Appx. 804, 807 (5th Cir. 2011) ("Section 541.061 contemplates . . . situations where a carrier represents 'specific circumstances' which will be covered and subsequently denies coverage."). Section

541.051 similarly requires evidence that the insurer misrepresented the terms or benefits of the policy. *See* TEX. INS. CODE § 541.051. Here, appellant points to no "specific circumstance" that appellees represented would be covered.

In *Effinger*, the claimant asserted appellees misrepresented the scope of coverage by representing that they would promptly pay for compensable injuries. 478 Fed. Appx. at 807. The Fifth Circuit held that "a policy's promise to promptly compensate does not become a misrepresentation merely because an insurance carrier disputes whether an injury is compensable and delays payment." *Id.* "Neither does a carrier's statement to the insured that coverage is denied amount to actionable misrepresentation merely because it is later determined that coverage was appropriate." Similarly, here, Liberty's denial of payment does not constitute a misrepresentation merely because it was later determined to be liable for coverage following the contested case hearing.

We conclude appellant failed to produce more than a scintilla of evidence as to any violation of section 541.061, and the trial court properly rendered summary judgment in favor of appellees on appellant's claims under the Insurance Code.

## LABOR CODE VIOLATION

In her petition, appellant also alleged Liberty and Smith "allowed the employer to dictate the methods by which and the terms on which a claim is handled and settled," in violation of Texas Labor Code section 415.002. Section 415.002 lists twenty-two administrative violations by an insurance carrier, including "allow[ing] an employer, other than a self-insured employer, to dictate the methods by which and the terms on which a claim is handled and settled." TEX. LAB. CODE ANN. § 415.002(a)(6) (West 2006). In their motion for summary judgment, appellees alleged there was no evidence that Liberty allowed the employer to dictate the methods or terms on which the claim was handled and/or settled. Appellant did not respond to appellees' no-evidence contention

in her response, nor does she brief the issue on appeal. Therefore, because appellant failed to produce more than a scintilla of evidence as to any violation of section 415.002, the trial court properly rendered no-evidence summary judgment in favor of appellees on appellant's claims under the Labor Code.

## DTPA VIOLATIONS

In their motion for summary judgment, appellees asserted that appellant's DTPA claims depended upon the viability of her Insurance Code claims; therefore, because she cannot recover on her Insurance Code claims, she likewise cannot recover on her DTPA claims. Appellees also asserted appellant had not and could not allege any viable set of facts that would establish consumer status under the DTPA as a matter of law.

> The entirety of appellant's DTPA and unconscionability allegations are as follows:

> [Appellant] re-alleges and incorporates each allegation contained in Paragraphs 1-5.6 of this Complaint as if fully set forth herein.

> The Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. [Appellees'] violations of the Texas Insurance Code, as set forth herein, specifically violate the DTPA as well and were unconscionable, as that term is legally defined.

The DTPA allows a consumer to "maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . (3) any unconscionable action or course of action by any person; *or (4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code . . . .*" TEX. BUS. & COM. CODE ANN. § 17.50(a)(3), (4) (West 2011) (emphasis added). Because we conclude appellant's claims under the Insurance Code fail, she cannot recover on her DTPA claim under subsection (a)(4) of section 17.50. *See Morris*, 383 S.W.3d at 148-50 (holding same because his suit was based on the insurance company's denial of compensability and delay in paying benefits until

ordered to do so). Therefore, we next consider whether appellees established as a matter of law that they were entitled to a traditional summary judgment on appellant's unconscionability claim. *See* TEX. BUS. & COM. CODE § 17.50(a)(3).[3]

An "[u]nconscionable action or course of action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). To prove an unconscionable action or course of action, a plaintiff must show that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998). Unconscionability is an objective standard for which scienter is irrelevant. *Id.*; *see also Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985) ("This should be determined by examining the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference.").

The premise of appellant's unconscionability claim is appellees' alleged failure to investigate. Paragraphs 1 through 3.2 of appellant's petition identify the discovery control plan, the identity of the parties, and venue and jurisdiction. The essence of appellant's allegations in paragraphs 4.1 through 5.6 is that appellees failed to adequately investigate her claim. In her response to appellees' motion for summary judgment, appellant alleged she has no experience as an insurance adjuster or claims handler, while appellees possessed a wealth of knowledge about Texas workers' compensation laws. Appellant argued appellees took unfair advantage of her in

---

[3] On appeal, both parties again cite to *Ruttiger*, but the only reference to DTPA claims in that case is the following: "Ruttiger agrees that his DTPA claim as pled and submitted to the jury depended on the validity of his Insurance Code claim. Because we have determined that he cannot recover on his Insurance Code claim, we likewise hold that he cannot recover on his DTPA claim." 381 S.W.3d at 446. Here, appellant does not agree her DTPA claim depends on the validity of her Insurance Code claims.

denying her on-the-job injury claim, and did so by using its experience and knowledge of the laws of the State of Texas and the rules and regulations governing Texas workers' compensation claims to exploit her lack of experience. Appellant concluded that from the inception of her claim, Liberty knew or should have known there was no legal or factual basis to sustain a dispute of benefits. In their motion for summary judgment, appellees raised several arguments, including that under *Ruttiger*, a workers' compensation claimant may not assert a claim for unreasonable investigation against a workers' compensation insurer.

The Insurance Code provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: . . . refusing to pay a claim without conducting a reasonable investigation with respect to the claim . . . ." TEX. INS. CODE § 541.060(7). Although the *Ruttiger* Court did not address a DTPA unconscionability claim; the Court did address whether a workers' compensation claimant could bring claims under the Insurance Code for "unfair settlement practices" and failure "to adopt and implement reasonable standards for prompt investigation of claims arising under its policies."[4] The Court noted that Insurance Code section 541.060 is entitled "Unfair Settlement Practices," and its text provides that specified acts or practices are "unfair settlement practices" and those settlement practices are unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. *Ruttiger*, 381 S.W.3d at 444 (citing TEX. INS. CODE § 541.060(a)). Settlements are defined as "a final resolution of all the issues in a workers' compensation claim that are permitted to be resolved under [the] terms of [the Act]." TEX. LAB. CODE § 401.011(40).

---

[4] The Court considered these claims under factual circumstances similar to those here: Ruttiger's damages claim was based on the insurance company's delay in providing both income and medical benefits and the delay's effect on him over and above what the effects of his injury would have been had the company not terminated benefits in July 2004.

After examining the purpose of the Insurance Code and the purpose of the Workers' Compensation Act, the *Ruttiger* Court concluded that "the current Act with its definitions, detailed procedures, and dispute resolution process demonstrate[ed] legislative intent for there to be no alternative remedies . . . ." *Ruttiger*, 381 S.W.3d at 444. "The provisions of the amended Act indicate legislative intent that its provisions for dispute resolution and remedies for failing to comply with those provisions in the workers' compensation context are exclusive of those in section 541.060." *Id.* The Court concluded Ruttiger could not assert a cause of action under Insurance Code section 541.060.

The Court next addressed claims under Insurance Code section 542.003 which prohibits an insurer from engaging "in an unfair settlement practice," including "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies . . . ." TEX. INS. CODE § 542.003(3). The Court noted "the Act contains specific requirements with which a workers' compensation carrier must comply when contesting a claim, and provides that failure to comply with the requirements can constitute waiver of the carrier's rights as well as subject the carrier to significant administrative penalties. The Act's requirements include time limits for payment of benefits, giving notice of a compensability contest and the specific reason for the contest, and necessarily subsume the requirement of proper investigation and claims processing." *Ruttiger*, 381 S.W.3d at 444-45.

The Court concluded "as [it] did with section 541.060, that in light of the specific substantive and procedural requirements built into the Act and the detrimental effects on carriers flowing from penalties that can be imposed for failing to comply with those requirements, the Legislature did not intend for workers' compensation claimants to have a cause of action against the carrier under the general provision of section 542.003." *Id.* at 445.

In this case, regardless of how appellant attempts to couch her claims, they are still based on allegations that appellees did not investigate her workers' compensation claim and improperly refused and/or delayed payment of benefits. It is clear from the record and the brief on appeal that appellant's unconscionability claim is a restatement of a claim based upon a failure to properly investigate her claim prior to refusing to pay the claim. Therefore, the sole remedy against appellees for failing to pay timely benefits to her is under the Workers' Compensation Act. If we were to allow appellant to pursue her failure to investigate claim against appellees outside of the Act, it would clearly be "at odds with the dispute resolution process of the workers' compensation system"—particularly because the Act provides remedies for alleged misconduct—and, as explained by the Supreme Court in *Ruttiger*, would be inconsistent with the aims of the Texas Legislature. 381 S.W.3d at 443-46.[5] For these reasons, we conclude the trial court properly rendered summary judgment in favor of appellees on appellant's unconscionability claim.

## CONCLUSION

For the reasons stated above, we affirm the trial court's summary judgment in favor of appellees.

Sandee Bryan Marion, Justice

---

[5] The *Ruttiger* Court acknowledged the great lengths the Texas Legislature had gone to in remedying past deficiencies when crafting a statutory structure that "carefully constructs rights, remedies, and procedures" to provide adequate coverage for injured workers. *Id.* at 440-41. "[I]n light of the specific substantive and procedural requirements built into the Act and the detrimental effects on the carriers flowing from penalties that can be imposed for failing to comply with those requirements," the Court concluded that claimants were precluded from separately pursuing a number of different causes of action that "would significantly undermine that scheme.'" *Id.* at 443-44.