

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-14-00903-CV

**LIGHTNING OIL CO.**,
Appellant

v.

**ANADARKO E&P ONSHORE LLC** fka Anadarko E&P Company, LP,
Appellee

From the 365th Judicial District Court, Dimmit County, Texas
Trial Court No. 14-01-12171-DCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  October 14, 2015

AFFIRMED

On August 19, 2015, this court issued an opinion and judgment in this appeal. Acting *sua sponte*, we withdraw our opinion and judgment of August 19, 2015, and substitute this opinion and judgment to clarify portions of the opinion. *See* TEX. R. APP. P. 19.1.

This is a subsurface trespass case between lessees of two adjacent mineral estates. Lightning Oil Company sued Anadarko E&P Onshore LLC to prevent Anadarko from siting a well on the land overlying Lightning's mineral estate and from drilling through Lightning's mineral estate to reach Anadarko's adjacent mineral estate. Because the surface estate owner controls "the

matrix of the underlying earth," and the summary judgment evidence conclusively proves the surface estate owner gave Anadarko permission to site and drill, we affirm the trial court's order.

## BACKGROUND

This appeal involves adjacent surface estates in Dimmit County and the severed mineral estates beneath them.

### A.    Cutlass Lease

The Cutlass Lease is a severed mineral estate under a portion of the Briscoe Ranch. When a previous owner of the fee simple to what is now the Briscoe Ranch conveyed the fee by warranty deed, the grantor severed the mineral estate by reserving "all mines of, and all oil, gas and all minerals, on and under the said land." The reservation did not expressly include any right to, or control of, any subterranean structures—the earth—underlying the surface estate.

### B.    Lightning's Lease

In 2009, the Cutlass Lease owners executed a lease with Lightning. In 2013, the parties executed an amended lease that includes the following provisions:

> [T]he right of exploring for, developing, operating, producing, owning, marketing, treating and transporting oil and gas from the Leased Premises, subject to the limitations contained in this Lease. The term "gas" shall mean hydrocarbon gases only and shall not include helium, carbon dioxide or other commercial gases.
>
> Lessor expressly excepts from this Lease and reserves to Lessor, all minerals of every kind and character, except those herein defined. Lessor further reserves all rights to geothermal water resources, including the rights to methane and other hydrocarbons from such water.

### C.    Anadarko's Lease; Surface, Subsurface Agreement

Anadarko leased a mineral estate under the Chaparral Wildlife Management Area (CWMA), which is adjacent to the surface estate overlying the Cutlass Lease. Anadarko's lease allows it to explore, and produce oil and gas from, the CWMA. In a separate Surface Use and Subsurface Easement Agreement, Anadarko got permission from Briscoe Ranch to place drilling

rigs on the surface estate overlying the Cutlass Lease and to drill through the earth under the Briscoe Ranch to form wells that open and bottom in the CWMA.

## D.  Lightning's Suit, Arguments

Lightning sued Anadarko to prevent Anadarko from siting wells on the Briscoe Ranch and from drilling through the earth within the boundaries of the Cutlass Lease.  As the leaseholder of the mineral estate, Lightning asserts it has the right to exclude others from drilling.  It contends it has the exclusive right to determine who can drill through the earth and the oil and gas within the boundaries circumscribing the Cutlass Lease.  Lightning insists that Briscoe Ranch's permission is not enough, and Lightning should not have to trust Anadarko to not take any seismic surveys as Anadarko drills through subterranean structures that harbor Lightning's oil and gas.

## E.  Anadarko's Arguments

Anadarko acknowledges it has begun siting wells on the Briscoe Ranch overlying the Cutlass Lease.  Anadarko also acknowledges it plans to drill wells 8,000 feet vertically before deviating the wellbores to reach its leasehold under the CWMA.  Anadarko argues that Briscoe Ranch, as the surface estate owner, controls the subterranean structures, and Anadarko needs only Briscoe Ranch's permission.  Anadarko argues that, as a matter of law, it cannot commit a trespass by drilling through the subterranean structures in which Lightning's oil and gas hydrocarbon molecules may lie.  According to Anadarko, because it has the surface estate owner's permission to site and drill, Lightning's claim for tortious interference must fail as a matter of law.

## F.  Procedural Posture

When Lightning learned Anadarko was preparing to drill on land above the Cutlass Lease, Lightning sought an injunction to prevent Anadarko from drilling through the Cutlass Lease area to reach Anadarko's adjacent mineral estate.

*1.    Anadarko's Motions for Summary Judgment*

After some discovery, Anadarko moved for summary judgment on traditional and no evidence grounds. In its traditional motion against Lightning's claims of trespass and tortious interference with contract, Anadarko asserted it established its defense of justification as a matter of law. In its no evidence motion, Anadarko asserted there was no evidence of at least one essential element of each of Lightning's claims.

*2.    Lightning's Motions for Summary Judgment*

Lightning moved for traditional summary judgment on (1) its request for a permanent injunction against Anadarko drilling through the Cutlass Lease and (2) its request for the court to declare that Briscoe Ranch could not "grant Anadarko a right to trespass through Lightning's property." Lightning did not expressly move for traditional summary judgment on its tortious interference with contract claim. In its no evidence motion, Lightning moved for summary judgment on Anadarko's affirmative defense of justification.

*3.    Trial Court's Actions*

In its November 24, 2014 order, the trial court denied Lightning's motion, and without stating the grounds for its decision, it granted Anadarko's motion. It then severed the remaining issues to make its order final and appealable. Lightning appeals the trial court's order.

## STANDARDS OF REVIEW

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In our review of the trial court's order, we examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding

contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

A defendant moving for traditional summary judgment must conclusively disprove at least one essential element of each of the plaintiff's claims. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence[,] . . . determine all questions presented[,] . . . [and] render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citations omitted); *accord Mann Frankfort*, 289 S.W.3d at 848.

We review a no evidence summary judgment using a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827).

If a trial court grants a motion for summary judgment that includes both traditional and no evidence grounds, we evaluate the no evidence grounds first. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant fails to meet its no evidence burden for any claim, we need not address the

corresponding traditional motion ground. *See Ford Motor Co.*, 135 S.W.3d at 60; *Vause v. Liberty Ins. Corp.*, 456 S.W.3d 222, 226 (Tex. App.—San Antonio 2014, no pet.).

We first address Lightning's trespass claim.

**TRESPASS**

**A.      Elements of Trespass**

A trespass is "'an unauthorized entry upon the land of another,'" *Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424 (Tex. 2015), such as an "'entry upon another's land . . . by causing or permitting a thing to cross the boundary of the premises.'" *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 416 (Tex. 1961) (quoting *Glade v. Dietert*, 295 S.W.2d 642, 645 (Tex. 1956)). The plaintiff alleging trespass must show it owned or otherwise had a legal right to exclude others from the property. *See Envtl. Processing Sys.*, 457 S.W.3d at 424; *Cain v. Fontana*, 423 S.W.2d 134, 137 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.).

**B.      Lightning's View of Its Mineral Estate**

The central question in this appeal is the nature of Lightning's interest. Lightning asserts its mineral estate leasehold includes the right to exclude others from the estate; it insists Anadarko is committing an ongoing trespass on Lightning's leasehold interest. To support its assertion, Lightning relies on several cases. We briefly review its principal cases.

*1.*      Edwards Aquifer Authority v. Day

At oral argument, Lightning asserted that *Edwards Aquifer Authority v. Day*, 369 S.W.3d 814 (Tex. 2012), was its "best case." Lightning points to *Day*'s reiteration that "oil and gas are owned in place." *Id.* at 829. *Day* also reiterated that a "lessee's interest [is] a separate, real interest, 'amount[ing] to a defeasible title in fee to the oil and gas in the ground.'" *Id.* (second alteration in original) (quoting *Tex. Co. v. Daugherty*, 176 S.W. 717, 719 (Tex. 1915)). Citing *Day*, Lightning seems to argue that its right to ownership of the oil and gas in place in the Cutlass Lease is not just

ownership of "the oil and gas *in* the ground," but is actually ownership of "the oil and gas [*and*] the ground." *Cf. id.* (emphasis added). *Day* did not expressly address the central question here: Who owns the earth in which a mineral estate may be contained? *Cf. id.* Because, as we later discuss, this court, the Fifth Circuit, and the Texas Supreme Court have each addressed the question which *Day* does not, we conclude that *Day* is distinguishable.

    *2.*      Stephens County v. Mid-Kansas Oil & Gas Co.

Lightning also relies on *Stephens County v. Mid-Kansas Oil* for the proposition that it has the "exclusive right" to the use and possession of the mineral strata. *See Stephens Cty. v. Mid-Kansas Oil & Gas Co.*, 254 S.W. 290, 295 (Tex. 1923). *Stephens* uses the term "exclusive right" a number of times such as the following:

- the exclusive right to appropriate [minerals] to any extent desired by the grantee and his assigns, *id.* at 293;
- the exclusive right to possess, use, and appropriate gas and oil, *id.*; and
- the exclusive right to conduct operations to mine, store, and transport [the minerals], *id.* at 294.

In each instance, *Stephens* is reciting the rights conveyed in a specific lease. *Id.* at 293–94. *Stephens* simply states that an oil and gas lessee typically has "the exclusive right to prospect for, produce, and dispose of the [oil and gas]" in the leased area. *Id.* *Stephens* does not state that an oil and gas lease automatically conveys to the lessee the exclusive right to control the subterranean structures within the boundaries circumscribing the lease; *Stephens* does not directly address who owns the earth surrounding the minerals. *Cf. id.* at 293–94.

    *3.*      Villarreal v. Grant Geophysical, Inc.

Lightning cites this court's proposition from *Villarreal* that "trespass under Texas law includes subsurface trespass as in the oil and gas context." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 268 (Tex. App.—San Antonio 2004, pet. denied) (citing *Gregg*, 344 S.W.2d at

416). This court, like others, recognized that a reflection seismographic survey of the plaintiff's mineral estate without the plaintiff's permission could constitute a trespass. *Id.* at 268–70 (citing *Phillips Petrol. Co. v. Cowden (Cowden I)*, 241 F.2d 586 (5th Cir. 1957) and *Phillips Petrol. Co. v. Cowden (Cowden II)*, 256 F.2d 408, 409 (5th Cir. 1958)) (discussing *Cowden I* and *Cowden II* and stating that a geophysical trespass also requires physical entry or injury on the surface estate).

But unlike *Villarreal*, there is no evidence that Anadarko conducted a seismographic survey of Lightning's mineral estate. Despite Lightning's fears that Anadarko will conduct a survey without Lightning's permission, there is no evidence that Anadarko has done so; *Villarreal*, *Cowden I*, and *Cowden II* are inapt.

### 4. Hastings Oil Co. v. Texas Co.

Lightning argues that *Hastings* supports Lightning's view that it may bar Anadarko from drilling through the earth containing Lightning's mineral estate. In *Hastings*, the Texas Supreme Court determined that a trespass may occur where an adjacent mineral estate's well *bottoms* in the plaintiff's mineral estate. *Hastings Oil Co. v. Tex. Co.*, 234 S.W.2d 389, 398 (Tex. 1950). Lightning offers no evidence that Anadarko has bottomed or opened a well within the Cutlass Lease, and Anadarko acknowledges that Lightning would have a cause of action against Anadarko (subject to the rule of capture) if Anadarko produced oil or gas from the Cutlass Lease. *Hastings* is distinguishable.

### 5. Chevron Oil Co. v. Howell

Lightning also argues that *Howell* addressed the same situation at issue here. In *Howell*, Chevron started drilling a directional well from Howell's surface estate through a severed mineral estate to reach an adjacent mineral estate. *Chevron Oil Co. v. Howell*, 407 S.W.2d 525, 526 (Tex. Civ. App.—Dallas 1966, writ ref'd n.r.e.). Howell sued and the trial court granted a temporary

injunction against Chevron's drilling. *Id.* Because Chevron drilled without permission from Howell or the mineral estate's owner, the Dallas court affirmed the trial court's order. *Id.* at 528.

Lightning cites *Howell* to show Anadarko cannot drill without Lightning's permission, but several factors undermine *Howell*'s applicability in this appeal. First, *Howell* is distinguishable on its facts. In *Howell*, the surface estate owner did not give Chevron permission to drill. *Cf. id.* at 526. Here, the evidence conclusively proves Briscoe Ranch gave Anadarko its permission. Next, *Howell* rejected Chevron's drilling through one mineral estate to reach another "without appellees' [the surface and mineral estate owners'] permission." *Id.* at 528. But *Howell* did not expressly consider whether *only* the surface estate owner's permission would have been sufficient. Finally, the proposition which Lightning contends *Howell* contains and which Lightning seeks to use—that the mineral interest owner may exclude others from drilling through its estate—has been contravened by this court and others. *E.g.*, *Springer Ranch, Ltd. v. Jones*, 421 S.W.3d 273 (Tex. App.—San Antonio 2013, no pet.).

## C. Anadarko's View of Lightning's Mineral Estate

Anadarko argues Briscoe Ranch—the surface estate owner—owns and controls the earth surrounding the minerals. Anadarko insists that Lightning—the mineral estate owner—may not bar Anadarko from drilling through the earth within the boundaries of the Cutlass Lease. Anadarko relies on, *inter alia*, opinions from this court, the Fifth Circuit, and the Texas Supreme Court.

### 1. Springer Ranch, Ltd. v. Jones

In *Springer Ranch*, we "construe[d] the term 'surface estate' to mean the portions of the earth[] over which the surface estate owner holds dominion after a severance of the mineral estate." *Springer Ranch*, 421 S.W.3d at 282. We added that "ownership of the hydrocarbons does not give the mineral owner ownership of the earth surrounding those substances." *Id.* at 283 (citing *Emeny v. United States,* 412 F.2d 1319, 1323 (Ct. Cl. 1969) (per curiam)).

*2.*      Dunn-McCampbell Royalty Interest, Inc. v. National Park Service

In *Dunn-McCampbell*, a case addressing mineral estates under the Padre Island National Seashore, the Fifth Circuit noted that "the conveyance of mineral rights ownership does not convey the entirety of the subsurface." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 441 (5th Cir. 2011). It observed that under Texas law, the surface estate owner, not the mineral estate owner, "owns all non-mineral 'molecules' of the land, i.e., the mass that undergirds the surface of the [conveyed land]." *Id.* at 442.

*3.*      Humble Oil & Refining Co. v. West

In *West*, the Texas Supreme Court clarified the nature of the surface estate. The Wests conveyed fee simple title to Humble Oil but reserved royalties on the oil and gas produced from the land. *Humble Oil & Ref. Co. v. West*, 508 S.W.2d 812, 815 (Tex. 1974). Following *Emeny*, the court noted that the Wests—who retained a royalty interest in the now-severed mineral estate— no longer owned the underground reservoir because "the surface of the leased lands remaining as the property of the [surface estate owners] included the geological structures beneath the surface." *Id.* (citing *Emeny*, 412 F.2d at 1323).

**D.**      **Control of Subsurface Structures**

Having reviewed the applicable law, we conclude that the surface estate owner controls the earth beneath the surface estate. *See Dunn-McCampbell*, 630 F.3d at 441; *West*, 508 S.W.2d at 815; *Springer Ranch*, 421 S.W.3d at 282. The mineral estate owner is entitled to "'a fair chance to recover the oil and gas in or under [the surface estate]," *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 15 (Tex. 2008) (quoting *Gulf Land Co. v. Atl. Ref. Co.*, 131 S.W.2d 73, 80 (Tex. 1939)), but absent the grant of a right to control the subterranean structures in which the oil and gas molecules are held, the mineral estate owner does not control "the mass that undergirds the surface of the [conveyed land]," *Dunn-McCampbell*, 630 F.3d at 442.

Thus, Lightning does not own or exclusively control the earth surrounding any hydrocarbon molecules that may lie within the boundaries of the Cutlass Lease. *See Dunn-McCampbell*, 630 F.3d at 441; *West*, 508 S.W.2d at 815; *Springer Ranch*, 421 S.W.3d at 282. As the surface estate owner, Briscoe Ranch controls the surface[1] and subsurface; it may grant Anadarko permission to site a well on its ranch, drill down through the earth within the boundaries of the Cutlass Lease, and directionally alter its wellbore into the CWMA. *See Dunn-McCampbell*, 630 F.3d at 441; *West*, 508 S.W.2d at 815; *Springer Ranch*, 421 S.W.3d at 282. *See generally* 1 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 218.6 (Release No. 49., 2014) (discussing policies and considerations regarding what permissions might be required for Blackacre's mineral estate owner to site a well on Whiteacre to reach Blackacre's mineral estate). Anadarko may not open or bottom its wellbores in, or otherwise produce oil or gas from, the Cutlass Lease without Lightning's permission, but with Briscoe Ranch's permission, Anadarko may penetrate the earth under the Briscoe Ranch to access Anadarko's mineral estate in the CWMA. *See Dunn-McCampbell*, 630 F.3d at 441; *West*, 508 S.W.2d at 815; *Springer Ranch*, 421 S.W.3d at 282.

**E.      No Evidence of Essential Element of Trespass**

In its no evidence motion, Anadarko moved for summary judgment on the ground that there was no evidence that it had committed a trespass on Lightning's mineral estate. *See Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424 (Tex. 2015) (describing a trespass as "'an unauthorized entry upon the land of another'"); *Gregg v. Delhi-Taylor Oil Corp.*, 344

---

[1] Briscoe Ranch's and Lightning's uses of the surface estate are subject to the accommodation doctrine, *see Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248–49 (Tex. 2013), and may also be governed by the Surface Use Agreement executed by Lightning and Briscoe Ranch. The agreement includes the following provision: "Lightning agrees to take all reasonable steps to prevent its operations from . . . [h]arming or damaging economic endeavors of [Briscoe Ranch] requiring use of the surface."

S.W.2d 411, 416 (Tex. 1961). Anadarko argues there is no evidence that Lightning has a legal right to exclude Anadarko from drilling through the earth within the boundaries of the Cutlass Lease, and thus there is no evidence of an essential element of Lightning's trespass claim. *See Envtl. Processing Sys.*, 457 S.W.3d at 424; *Cain v. Fontana*, 423 S.W.2d 134, 137 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.).

Given the terms of its lease, the applicable law we have previously discussed, and the record before us, we necessarily conclude Lightning failed to produce any evidence or authority to show it has a right to exclude others from drilling through the earth surrounding the oil and gas hydrocarbons in the Cutlass Lease. *See Dunn-McCampbell*, 630 F.3d at 441; *West*, 508 S.W.2d at 815; *Springer Ranch*, 421 S.W.3d at 282. Thus, because the evidence also conclusively proves Anadarko has Briscoe Ranch's permission to site one or more wells on the Briscoe Ranch and drill through the earth beneath the ranch to reach the CWMA, Lightning failed to meet its burden to provide more than a scintilla of evidence on at least one essential element of trespass. *See Envtl. Processing Sys.*, 457 S.W.3d at 424 (elements of trespass); *Mack Trucks*, 206 S.W.3d at 582 (no evidence motion). Because the trial court could have properly denied Lightning's traditional motion and granted Anadarko's no evidence motion on Lightning's trespass claim, we need not address Anadarko's traditional motion. *See Ford Motor Co.*, 135 S.W.3d at 600; *Vause*, 456 S.W.3d at 226.

**TORTIOUS INTERFERENCE WITH CONTRACT**

Lightning also sued Anadarko for tortious interference with Lightning's lease.

**A.      Tortious Interference Elements**

"A party alleging tortious interference must prove four elements to sustain its claim: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual

damage or loss occurred." *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *accord Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Inv'rs*).

**B.      Anadarko's No Evidence Motion**

In its no evidence motion against Lightning's claim of tortious interference with contract, Anadarko asserted that Lightning failed to meet its burden on the essential elements of proximately caused damage and actual damage. *See Prudential Ins.*, 29 S.W.3d at 77; *ACS Inv'rs*, 943 S.W.2d at 430. Anadarko argues there is no evidence it has opened or bottomed any well in the Cutlass Lease, and thus there is no evidence that Anadarko proximately caused any damage to Lightning's lease or that Lightning has suffered any actual damage or loss. But in its affidavits, Lightning contends that Anadarko's operations on and under the surface are tortiously interfering, and will necessarily tortiously interfere, with its right to produce oil and gas from the Cutlass Lease. Thus, Lightning argues, its affidavits are some evidence of Anadarko's tortious interference with Lightning's lease.

**C.      Anadarko's Traditional Motion**

Even assuming arguendo that Lightning produced some evidence of Anadarko's alleged tortious interference, because the trial court did not state the basis for granting Anadarko's motion, we must still address Anadarko's traditional motion on its affirmative defense of justification. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) ("When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious."); *accord Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009).

### 1.    *Justification Defense*

"Justification is an affirmative defense to tortious interference with contract . . . ." *Prudential Ins.*, 29 S.W.3d at 80.  A defendant may justify its actions "based on the exercise of either (1) [its] own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken."  *Id.*; *accord Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 691 (Tex. 1989).

### 2.    *Anadarko's Right to Drill*

In its traditional motion, Anadarko argued it established its affirmative defense of justification as a matter of law.  The summary judgment evidence includes the Surface Use and Subsurface Easement Agreement between Briscoe Ranch and Anadarko.  The agreement shows Briscoe Ranch granted Anadarko permission to (1) site wells on the Briscoe Ranch overlying the Cutlass Lease and (2) directionally drill through the earth within the Cutlass Lease boundaries to reach Anadarko's CWMA mineral estate.  Because Briscoe Ranch, not Lightning, controls the subterranean structures of the earth underlying the Briscoe Ranch and within which the Cutlass Lease is located, we conclude that Briscoe Ranch had the right to grant Anadarko permission to drill through that earth to reach the CWMA mineral estate.

### 3.    *Affirmative Defense Established*

The summary judgment evidence conclusively proves Briscoe Ranch gave Anadarko permission to site and drill, and thus Anadarko acted within its own legal rights granted by Briscoe Ranch, and its justification defense is established as a matter of law.  *See Prudential Ins.*, 29 S.W.3d at 80; *Sterner*, 767 S.W.2d at 691.  Thus, we conclude the trial court could have properly denied Lightning's no evidence motion and granted Anadarko's traditional motion for summary judgment against Lightning's claim that Anadarko tortiously interfered with Lighting's lease.

**CONCLUSION**

Lightning's lease conveyed to it "the right of exploring for, developing, operating, producing, owning, marketing, treating and transporting oil and gas from the [Cutlass Lease]." Its lease did not convey any right to control the subterranean structures in which any hydrocarbon molecules might be found, and Texas law does not automatically convey such a right in an oil and gas lease. Thus, as the surface estate owner, Briscoe Ranch could grant Anadarko permission to site wells on the surface above the Cutlass Lease and drill through the earth within the boundaries of the Cutlass Lease to reach Anadarko's adjacent mineral estate.

Because Lightning failed to produce any evidence of at least one essential element of Anadarko's alleged trespass, and because Anadarko conclusively established its affirmative defense of justification, the trial court could have granted Anadarko's no evidence motion against Lightning's trespass claim and Anadarko's traditional motion against Lightning's tortious interference with contract claim.

We affirm the trial court's order.

Patricia O. Alvarez, Justice