397 Pa. Superior Ct. 564 (1990)
580 A.2d 776
Wesley L. POMPOSINI, Appellee,
v.
T.W. PHILLIPS GAS AND OIL COMPANY, T.W. Phillips Gas and Oil Co., a Pennsylvania corporation, and B.D. Phillips, Jr., Appellants.
Wesley L. POMPOSINI, Appellant,
v.
T.W. PHILLIPS GAS AND OIL COMPANY, T.W. Phillips Gas and Oil Co., a Pennsylvania corporation, and B.D. Phillips, Jr., Appellees.
Supreme Court of Pennsylvania.
Argued November 15, 1989.
Filed August 31, 1990.
Reargument Denied October 17, 1990.
*566 Kenneth W. Behrend, Pittsburgh, for appellant (at 628) and appellee (at 787).
Carolyn M. Branthoover, Pittsburgh, for appellant (at 787) and appellee (at 628).
Before ROWLEY, WIEAND and HOFFMAN, JJ.
WIEAND, Judge:
When Wesley L. Pomposini acquired title in 1951 to a tract of 175 acres in Conemaugh Township, Indiana County, the tract was encumbered by a 1946 lease "for the sole and only purpose of drilling and operating for oil and gas, with the exclusive right to operate the same for the term of twenty years, and as long thereafter as oil or gas is produced in paying quantities, or operations for oil or gas are being conducted thereon, including the right to commence operations for drilling a well or other wells at any time during the term of this lease. . . ." The lease required the lessee to pay rentals of $43.75 per quarter until it commenced operations, and thereafter the rent was to be determined according to a sliding scale based on gas pressure *567 readings.[1] T.W. Phillips Oil & Gas Co., the lessee, did not establish a producing gas well until 1953 and used it exclusively for production purposes for 62 1/2 days in 1954. Thereafter, the well was used primarily as a reservoir into which gas was injected and stored. As such, it produced little native gas. Most of the gas came from an interstate gas pipe line. Since 1981, however, the well has been used exclusively for the production of gas.
From 1954 until October, 1979, Pomposini accepted quarterly payments of $18.75 ($75.00 per year), apparently believing them to be payments for the production of gas. When he subsequently learned that the well was being used for storage purposes, he filed suit against the lessee, its predecessor corporation,[2] and its president, B.D. Phillips, seeking compensatory and punitive damages for what he alleged to be unauthorized and fraudulent use of the well for the storage of gas. The complaint did not contain a demand for trial by jury and came on for trial without jury before the Honorable Maurice Louik. Following trial, Pomposini was awarded compensatory damages of $14,850.00, based on the fair rental value of the well during the period in which it was used primarily for storage purposes. Post-trial *568 motions were denied,[3] and both parties appealed from the judgment entered on the trial court's adjudication.
Pomposini's failure to demand a jury trial constituted a waiver of the right thereto under Pa.R.C.P. 1007.1. A request for a jury trial was not made until after the trial without jury was in its fourth day and after an amendment to the complaint had been allowed. The request for jury trial was denied by the trial court. This did not constitute an abuse of discretion.
The written lease agreement does not expressly authorize the use of the land or the well thereon for the storage of gas. The lease was solely for the "purpose of drilling and operating for oil and gas. . . ." Storage can be permitted under such a lease only if it was the intent of the parties to include storage within the grant of authority to operate for oil and gas. The trial court determined that storage was not a use contemplated by the parties.
The parties' intention must be gathered from a reading of the entire agreement. Stewart v. Chernicky, 439 Pa. 43, 49, 266 A.2d 259, 263 (1970), citing New Chapter Coal Co. v. McKee, 411 Pa. 307, 191 A.2d 830 (1963) and Mt. Carmel Railroad Co. v. M.A. Hanna Co., 371 Pa. 232, 89 A.2d 508 (1952). The agreement in this case was prepared by the lessee, which was accustomed to dealing with property of a speculative nature. It is appropriate, therefore, that any ambiguity in the written agreement be construed in favor of the lessor. See: Rusiski v. Pribonic, 511 Pa. 383, 390, 515 A.2d 507, 510 (1986); Ormond Realty v. Ninnis, 341 Pa.Super. 101, 105, 491 A.2d 169, 172 (1985). Therefore, *569 "[a]ll rights claimed by the lessee that are not conferred in direct terms or by fair implication . . . are to be considered as being withheld by the lessor." 38 Am.Jur.2d, Gas and Oil § 94 (1968). See also: Ray v. Western Pa. Natural Gas Co., 138 Pa. 576, 20 A. 1065 (1891).
The written agreement between Pomposini and his lessee does not disclose an implied intent to allow gas storage in the well or in the subsurface caverns underlying the same. It is revealing of their intent that the scheme for payment of royalties is based on gas pressure at any well "from which gas is marketed." The lease does not establish any means for determining the amount of rent to be paid for use of the premises for gas storage. It seems reasonably certain, therefore, that the parties did not contemplate that the premises would be used for the storage of gas.
The Supreme Court of Pennsylvania has observed that, "the traditional oil and gas lease is far from the simplest of property concepts." Brown v. Haight, 435 Pa. 12, 15, 255 A.2d 508, 510 (1969). A conveyance of the subsurface oil and gas results in a severance of the mineral interests from the surface rights and conveys to the grantee a corporeal interest in the oil and gas underlying the grantor's property. Smith v. Glen Alden Coal Co., 347 Pa. 290, 299, 32 A.2d 227, 232 (1943); Barnsdall v. Bradford Gas Co., 225 Pa. 338, 343, 74 A. 207, 208 (1909). Here, however, Pomposini merely demised an interest in the oil and gas, albeit for as long as there remained oil and gas to be produced in paying quantities. The severance of the mineral rights under these circumstances must be narrowly construed. The right to extract gas did not include the right to use the cavernous spaces owned by the lessor for the storage of gas in the absence of an express agreement therefor. Cf. Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 296, 25 A. 597, 598 (1893); Emeny v. U.S., 188 Ct.Cl. 1024, 412 F.2d 1319, 1323, (1969). See also: Ellis v. Arkansas Louisiana Gas Co., 450 F.Supp. 412, 420 (E.D.Okla.), aff'd, 609 F.2d 436, cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1978) and McGinnis, Some Legal Problems in Underground *570 Gas Storage, 17 Institute on Oil & Gas Law & Taxation 23, 51 (1966) (right to store should not be implied or presumed in the absence of clear evidence of such intent). Because the lessee did not acquire an estate in the caverns and was not authorized to store gas on plaintiff's land, the trial court correctly held that the lessee was liable for the unauthorized storage of gas on Pomposini's land.
We agree with Phillips, however, that the trial court erred when it imposed liability personally on the president of the corporate lessee. "[O]ne who deals with a corporation, knowing it to be such, cannot enforce an individual liability against the officers or agents who act for the corporation." Bala Corporation v. McGlinn, 295 Pa. 74, 79, 144 A. 823, 824 (1929). This was not a case in which it was necessary to "pierce the corporate veil" in order to prevent the doing of injustice. Neither was it a case in which personal liability was to be imposed upon corporate officers because of active participation in tortious conduct. Indeed, the record does not disclose that the current president of the corporate lessee participated in the earlier decision to store gas or that the decision to do so was reached for the purpose of depriving Pomposini of his property wrongfully.
The trial court determined that the lessee's unauthorized use of Pomposini's land for the storage of gas was attributable to a bona fide misinterpretation of the lease agreement and was not an act of intentional fraud or trespass. This finding is supported by the evidence.
In view of the bona fide nature of the dispute, the trial court properly refused to award punitive damages. Pomposini argues that punitive damages were recoverable because the lessee fraudulently misrepresented the use which it was making of the well. He contends that fraud was demonstrated by evidence that the company always intended to use the well for storage but nevertheless represented that production was ongoing. For this reason, he argues, the lessee misrepresented the use of the well in a letter of *571 January 12, 1954, announcing the completion of a "producing well," and requesting a supplemental pipeline right of way. Fraud was also demonstrated, he argues, by the regular tender of royalty payments.
Fraud consists of anything calculated to deceive whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look, or gesture. See Frowen v. Blank, 493 Pa. 137, 143, 425 A.2d 412, 415 (1981); In re Thorne's Estate, 344 Pa. 503, 511 n. 2, 25 A.2d 811, 816 n. 2 (1942). Traditionally, in order to [prove] a cause of action for fraud, the plaintiff was required to establish:
(1) a misrepresentation;
(2) a fraudulent utterance thereof;
(3) an intention by the maker that the recipient will thereby be induced to act;
(4) justifiable reliance by the recipient upon the misrepresentation;
(5) damage to the recipient as the proximate result.

See Pittsburgh Nat'l Bank v. Larson, 352 Pa.Super. 250, 507 A.2d 867 (1986), quoting Delahanty v. First Pennsylvania Bank, 318 Pa.Super. 90, 108, 464 A.2d 1243, 1252 (1983).
Woodward v. Dietrich, 378 Pa.Super. 111, 123-124, 548 A.2d 301, 307 (1988). The burden of proving fraud by clear, precise and convincing evidence in this case was on the lessor. Snell v. Commonwealth, State Examining Board, 490 Pa. 277, 281, 416 A.2d 468, 470 (1980).
In this case, the trial court could readily find, as it did, that Pomposini had failed to prove an intentional misrepresentation by the lessee or its officers and agents. In January, 1954, the lessee had completed drilling a well which was then producing gas. When the lessor granted an additional pipeline right of way, the well was being used for production as the lessee had represented. Similarly, it is not possible to infer an intent to mislead from the tender of royalty payments. These payments were the only method *572 of compensation established by the lease, and it is understandable, therefore, that such payments would be continued after the lessee began using the land for the storage of gas. Finally, the well, in fact, continued to be used to produce gas, albeit in small quantities. Moreover, the storage of gas was not concealed. It was reported to the Pennsylvania Department of Environmental Resources and constituted information available to the general public. We perceive no basis for disturbing the trial court's refusal to find fraud entitling Pomposini to punitive damages.
The trial court awarded compensatory damages based upon the fair rental value of the underground space used for the storage of gas. We find no error in this measure of damages. In doing so, we expressly reject Pomposini's contention that he should be allowed to recover as damages the profits derived by the lessee upon resale of the gas. The gas resold by the lessee was gas to which the lessee was rightfully entitled. The profits derived therefrom were earned by the efforts and business acumen of the lessee. Pomposini was not entitled thereto. His loss was to be measured by the unauthorized use of his land which impaired his own use thereof for personal or commercial purposes.
In addition to the fair market value for storage purposes, Pomposini was entitled to recover royalties in amounts specified by the lease for gas produced and sold by Phillips. The amount of the royalties, according to the lease, was to be determined according to the pressures exerted by native gas. Because the lessee used the well for storage purposes, however, both native and foreign gas were commingled. The trial court determined that the amount of gas injected into the well could not be separated with certainty from the amount of natural gas produced and stored. Under these circumstances, Pomposini was entitled to royalties based on the pressure exerted by the gas without regard to whether the gas therein was native or injected from a foreign source. See: Humble Oil Refining Co. v. West, 508 S.W.2d 812 (Tex. 1974), cert. denied, *573 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 154 (1977). From the amount of royalties thus determined, however, the lessee was entitled to a credit for all rents and royalties previously paid.
Finally, Pomposini argues that the lease terminated at the expiration of the original twenty (20) year term, after which title to all gas underlying the surface of his land reverted to him. As such, he contends, he is entitled to profits derived from all sales of gas thereafter. Although the trial court did not specifically decide this claim, it did make findings of fact which are determinative. The well continued to produce gas before and after 1974, while it was also being used to store additional gas. Thus, the trial court found that, "[i]n using the well for storage purposes, Phillips injected and withdrew gas from the well as it was needed." The court's findings are supported by the evidence.
In 1954, when gas was discovered in paying quantities, the lessee's interest vested. That interest continues as long as gas can be produced in paying quantities or as long as "operations" for gas are being conducted. The lessee's gas operations have continued uninterrupted since 1954, and, since 1981, the well is again being used solely for production purposes. By the terms of the written lease, therefore, the lessee's right to extract gas has not terminated. Since 1981, Pomposini is entitled to be compensated according to royalties specified in the written agreement between the parties.
The judgment entered against B.D. Phillips, Jr., is reversed and set aside. The judgment against T.W. Phillips Gas and Oil Co. is vacated, and the case is remanded to the trial court for a determination of damages consistent with the foregoing opinion. Jurisdiction is not retained.
NOTES
[1] The sliding scale was established as follows:

Should any well not produce oil, but produce gas in paying quantities, and the gas therefrom be sold off the said premises, the consideration to said first party for the gas from each well from which gas is marketed shall be as follows:
At the rate of two hundred dollars per year while the well shows a pressure of 200 or more lbs., per square inch upon being shut in five minutes in two inch pipe or thirty minutes in larger pipe; at the rate of one hundred dollars per year while the well shows a pressure of 100 or more lbs. per square inch and less than 200 lbs. per square inch upon being shut in five minutes in two inch pipe or thirty minutes in larger pipe; at the rate of fifty dollars per year while the well shows a pressure of less than 100 lbs. per square inch upon being shut in five minutes in two inch pipe or thirty minutes in larger pipe; to be paid quarterly from completion until abandonment of well.
[2] The original lessee, T.W. Phillips Oil & Gas Company, assigned the lease as part of a corporate reorganization in 1975 to T.W. Phillips Oil and Gas Co., which is sometimes referred to herein as "Phillips."
[3] Both parties filed post-trial motions. Plaintiff's post-trial motions were filed timely within ten (10) days. Defendants' post-trial motions were filed twelve (12) days after plaintiff's post-trial motions. This was untimely under Pa.R.C.P. 227.1(c), which permits defendants to file post-trial motions "within ten days after the filing of the first post-trial motion[s]." The defendants' post-trial motions, however, were considered on their merits by the trial court and were not stricken as untimely. The issues raised in these post-trial motions, therefore, have been preserved for appellate review. S.N.T. Industries, Inc. v. Geonopulos, 512 Pa. 330, 516 A.2d 705 (1986); Wittig v. Carlacci, 370 Pa.Super. 584, 586, 537 A.2d 29, 30 (1988).