ACCEPTED
04-14-00152-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/3/2015 6:25:47 PM
KEITH HOTTLE
CLERK

NO. 04-14-00152-CV

IN THE COURT OF APPEALS
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
9/3/2015 6:25:47 PM
KEITH E. HOTTLE
Clerk

LIGHTNING OIL COMPANY, Appellant

v.

ANADARKO E&P ONSHORE LLC fka
ANADARKO E&P COMPANY, LP, Appellee

---

## APPELLANT LIGHTNING OIL COMPANY'S
## MOTION FOR EN BANC RECONSIDERATION

---

BRUCE K. SPINDLER
State Bar No. 18947050
Email: bspindler@langleybanack.com
ROBINSON C. RAMSEY
State Bar No. 16523700
Email: rramsey@langleybanack.com
STEPHEN J. AHL
Email: sahl@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Suite 900
745 East Mulberry Avenue
San Antonio, Texas 78212
Telephone: (210) 736-6600
Telecopier: (210) 735-6889

ATTORNEYS FOR APPELLANT
LIGHTNING OIL CO.

**APPELLANT REQUESTS ORAL ARGUMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. 1

TABLE OF AUTHORITIES ........................................................................ 2

POINTS ...................................................................................................... 4

I.    Lightning owns the hydrocarbon-containing strata; but regardless of who owns the strata, Lightning has the right to prevent Anadarko from drilling through these formations. ............................................. 4

II.    Lightning's mineral estate is dominant over the surface estate, and Anadarko's conduct interferes with Lightning's development of its mineral lease. ........................................................................ 4

III.    Anadarko's conduct in drilling through the hydrocarbon-containing formations on the Cutlass Lease constitutes a trespass on Lightning's mineral estate. ........................................................... 4

ARGUMENT............................................................................................... 5

I.    Lightning owns the hydrocarbon-containing strata; but regardless of who owns the strata, Lightning has the right to prevent Anadarko from drilling through these formations. ....... 5

    A. Lightning owns the strata in which its minerals are embedded because the minerals are part of the realty. ........... 5

    B. Regardless of strata ownership, Lightning has the right to prevent Anadarko from drilling through Lightning's minerals. ............................................................. 10

II.    Lightning's mineral estate is dominant over the surface estate, and Anadarko's conduct interferes with Lightning's development of its mineral lease. ........................................ 15

III.    Anadarko trespassed on Lightning's mineral estate. ................ 21

PRAYER ................................................................................................... 22

CERTIFICATE OF COMPLIANCE........................................................ 23

CERTIFICATE OF SERVICE................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Cain v. Fontana*, 423 S.W.2d 134 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.) .................................................................................. 21

*Chevron Oil Co. v. Howell,* 407 S.W.2d 525 (Tex. Civ. App.—Dallas 1966, writ ref'd n.r.e.) .................................................................................17

*Coastal Oil & Gas Corp. v. Garza*, 268 S.W.3d 1 (Tex. 2008) .................. 5, 8

*Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431 (5th Cir. 2011) ................................................................. 8, 18

*Edwards Aquifer v. Day*, 369 S.W.3d 814 (Tex. 2012) .......................passim

*Eliff v. Texon Drilling Co.*, 210 S.W.3d 558 (Tex. 1948) ............................ 10

*Emeny v. United States*, 412 F.2d 1319 (Ct. Cl. 1969) ...................... 13, 18, 19

*Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414 (Tex. 2015) .................................................................. 21

*Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377 (Tex. 2012)....................................................................................14, 15

*Geothermal Kinetics, Inc. v. Union Oil Co.*, 141 Cal. Rptr. 879 (Cal. Ct. App. 1977) ................................................................................ 18

*Getty Oil Co. v. Jones*, 470 S.W.2d 618 (Tex. 1971) ...............................5, 15

*Harris v. Currie*, 176 S.W.2d 302 (Tex. 1943) ............................................ 21

*Lightning Oil Co. v. Anadarko E&P Onshore LLC*, ___ S.W.3d ___, No. 04-14-00903-CV, 2015 WL 4933439 (Tex. App.—San Antonio Aug. 19, 2015, no. pet. h.) .........................passim

*Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654 (Tex. 1999).......................22

*Mitchell v. Baker Motel of Dallas, Inc.*, 528 S.W.2d 577 (Tex. 1975) .............................................................................................. 16

*Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204 (Tex. App.—Corpus Christi 2002, no pet.) .............................................. 12

*Salazar v. Sanders*, 440 S.W.3d 863 (Tex. App.—El Paso 2013, pet. denied).................................................. 21

*Springer Ranch v. Jones*, 421 S.W.3d 273 (Tex. App.—San Antonio 2013, no pet.)............................................18, 19

*Stephens County v. Mid-Kansas Oil & Gas Co.*, 254 S.W. 291 (Tex. 1923).................................................................7, 13

*Tarrant County Water Control & Imp. Dist. No. One v. Haupt, Inc.*,
854 S.W.2d 909 (Tex. 1993) ............................................................... 15, 16

*Texas Co. v. Daugherty*, 176 S.W. 717 (Tex. 1917) ................................. passim

## Rules

TEX. R. CIV. P. 166a ................................................................................. 16

# POINTS

I. Lightning owns the hydrocarbon-containing strata; but regardless of who owns the strata, Lightning has the right to prevent Anadarko from drilling through these formations.

    A. Lightning owns the strata in which its minerals are embedded because the minerals are part of the realty.

    B. Regardless of strata ownership, Lightning has the right to prevent Anadarko from drilling through Lightning's minerals.

II. Lightning's mineral estate is dominant over the surface estate, and Anadarko's conduct interferes with Lightning's development of its mineral lease.

III. Anadarko's conduct in drilling through the hydrocarbon-containing formations on the Cutlass Lease constitutes a trespass on Lightning's mineral estate.

The panel has misconstrued the Texas Supreme Court's decision in *Coastal Oil & Gas Corp. v. Garza*, 268 S.W.3d 1 (Tex. 2008), to arrive at a ruling that is directly contrary to *Texas Co. v. Daugherty*, 176 S.W. 717 (Tex. 1917), a controlling Supreme Court case, which the panel's opinion did not mention at all, and which was reaffirmed on this very issue in *Edwards Aquifer v. Day*, 369 S.W.3d 814, 829 (Tex. 2012).

Not only did the panel ignore Texas Supreme Court precedent that oil and gas in place are part of the realty, the panel's opinion contravenes the doctrine of dominant jurisdiction by elevating the surface estate over the mineral estate. *See Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex. 1971) (holding that the mineral estate is dominant over the surface estate).

Under these circumstances, the panel's opinion merits en banc reconsideration to addresses core issues that impact not only Texas jurisprudence relating to oil and gas, but also the oil-and-gas industry itself.

## ARGUMENT

I. **Lightning owns the hydrocarbon-containing strata; but regardless of who owns the strata, Lightning has the right to prevent Anadarko from drilling through these formations.**

A. **Lightning owns the strata in which its minerals are embedded because the minerals are part of the realty.**

According to the panel's opinion, although Lightning owns the minerals, it does not own the realty in which those minerals are embedded

5

because they are not a part of the realty. *Lightning Oil Co. v. Anadarko E&P Onshore LLC*, ___ S.W.3d ___, No. 04-14-00903-CV, 2015 WL 4933439, at *3–4 (Tex. App.—San Antonio Aug. 19, 2015, no. pet. h.). But according to the Supreme Court of Texas, minerals in place "lie within the strata of the earth, and necessarily are a part of the realty." *Daugherty*, 176 S.W. at 719 (cited with approval and reaffirmed on this issue in *Edwards Aquifer Authority v. Day*, 369 S.W.3d 814, 829 (Tex. 2012)). "[F]or the purpose of ownership and conveyance of solid minerals, the earth may be divided horizontally as well as vertically." *Daugherty*, 176 S.W. at 719. Therefore, "*title to the surface may rest in one person and title to the strata beneath the surface containing such minerals in another*." (emphasis added). *Id.* Accordingly, if, as the panel concedes, Lightning owns the minerals, it also necessarily owns the real-estate strata in which those minerals are embedded. *See id.*

The panel's opinion states that "*Stephens* does not directly address who owns the earth surrounding the minerals." *Lightning,* 2015 WL 4933439, at *4. Actually, *Stephens* does address that issue by pointing out that "oil and gas in place are minerals and realty, subject to ownership, severance, and sale, while embedded in the sands and rocks beneath the earth's surface" and that "before oil is extracted it is part of the land." *Stephens County v. Mid-Kansas Oil & Gas Co.*, 254 S.W. 291, 292 (Tex.

6

1923) (cited with approval in *Day*, 369 S.W.3d at 828-29). Therefore, if, as the Supreme Court of Texas has held, oil and gas in place are owned as part of the land, it necessarily follows that Lightning owns the land in which the oil and gas is ensconced—at least until Lightning's lease has expired—because those minerals are part of that land. *See Daugherty*, 176 S.W. at 719 (holding that minerals in place "are a part of the realty while in place").

The panel also recites that "*Stephens* does not state that an oil and gas lease automatically conveys to the lessee the exclusive right to control the subterranean structures within the boundaries circumscribing the lease." *Lightning,* 2015 WL 4933439, at *4. But it does state that an oil-and-gas lease transfers to the lessee ownership of any strata in which minerals exist. *See Stephens,* 254 S.W. at 293 (recognizing that an oil-and-gas lease "effect[s] a severance of the property in the strata of minerals from the property in the remainder of the land; the mineral strata being as much land as the nonmineral portion of the soil"). This is consistent with the Texas Supreme Court's holding that minerals in place "lie within the strata of the earth, and necessarily are a part of the realty." *Daugherty*, 176 S.W. at 719.

The panel cites *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.* in support of the assertion that "the conveyance of mineral rights ownership does not convey the entirety of the subsurface."

7

*Lightning*, 2015 WL 4933439, at *5 (quoting 630 F.3d 431, 441 (5th Cir. 2011)). But even under the panel's rationale, this conveyance would still include that part of the subsurface that contains minerals. *See Daugherty*, 176 S.W. at 719. Nevertheless, Anadarko asserts that the ownership of minerals does not include ownership of the strata in which they are located in place. The crux of that claim, which this court has erroneously adopted, relies on the following language from the Texas Supreme Court's opinion in *Garza*:

> While a mineral rights owner has a real interest in oil and gas in place, this right does not extend to *specific* oil and gas beneath the property; ownership must be considered with the law of capture, which is recognized as a property right as well. The minerals owner is entitled, not to the molecules actually residing below the surface, but to a fair chance to recover the oil and gas in or under his land, or their equivalents in kind. (emphasis added).

268 S.W.3d at 15.

Anadarko and the commentators on which it relies assume that *Garza* abrogated the law of ownership of minerals in place. But in *Day*, four years following *Garza*, the Supreme Court specifically addressed this misconception:

> Most recently, in *Coastal Oil & Gas Corp. v. Garza Energy Trust*, we observed that "the rule of capture determines title to [natural] gas that drains from property owned by one person onto property owned by another. *It says nothing about the ownership of gas that has remained in place* (emphasis added).

8

*Day*, 369 S.W.3d at 829.[1]  Therefore, the Supreme Court rejected the same argument Anadarko makes here:

> Because a landowner is not entitled to any specific molecules of groundwater or even to any specific amount, the Authority [Edwards Aquifer] argues that the landowner has no interest that entitles him to exclude others from taking water below his property and therefore no ownership in place. *The Lessee in Daugherty made essentially the same argument and we rejected it.* (emphasis added).

*Id.* at 830.

Here, as in *Daugherty*, Lightning's oil-and-gas lease does not constitute a "mere demise of the premises for a given period, as in the case of an ordinary leasehold," nor does it "amount simply to a grant of the right to prospect upon the land for oil or gas and reduce those substances to possession and ownership." 176 S.W. at 718.  Instead, it deals with "the oil, gas, and other minerals 'in and under' the land as property, in the ground, capable of ownership and subject to be[ing] conveyed." *Id.*  To rule in Anadarko's favor, this court would have to (and did) ignore Texas Supreme Court precedent relating to ownership of minerals in place.

---

[1] All internal quotations and citations omitted throughout this motion unless otherwise noted.

**B. Regardless of strata ownership, Lightning has the right to prevent Anadarko from drilling through Lightning's minerals.**

Even hypothetically accepting the assertion that Lightning does not own this mineral-estate strata, it nevertheless has the right to the exclusive use and possession of any strata in which minerals are located. *Day* confirmed that the right of an oil-and-gas owner to prevent the drilling of a well on an adjacent tract that was bottomed (not producing) in an oil-and-gas *formation* under his own property. The Supreme Court stated that the landowner had the right to exclude others, not only from producing the groundwater (which it earlier equated to oil-and-gas rights), but from the groundwater itself:

> Furthermore, we later held that a landowner is entitled to prohibit a well from being drilled on other property but bottomed in an oil and gas formation under his own—a slant or deviated well. *Thus, a landowner has a right to exclude others from groundwater beneath his property,* but one that cannot be used to prevent ordinary drainage (emphasis added).

*Day*, 369 S.W.3d at 830 (quoting *Eliff v. Texon Drilling Co.*, 210 S.W.3d 558, 561 (Tex. 1948)).

In discussing the rights available to a landowner to exclude others from their real-property interest, *Day* reiterated:

> In *Elliff*, we restated the law regarding ownership of oil and gas in place: In our state the landowner is regarded as having absolute title in severalty to the

10

oil and gas in place beneath his land. The only qualification of that rule of ownership is that it must be considered in connection with the law of capture and is subject to police regulations. *The oil and gas beneath the soil are considered a part of the realty. Each owner of land owns separately, distinctly and exclusively all of the oil and gas under his land and is accorded the usual remedies against the trespassers....* (emphasis added).

*Day*, 369 S.W.3d at 831-832.

In rejecting Lightning's reliance on *Day*, the panel stated, "*Day* did not address the central question here: Who owns the earth in which a mineral estate may be contained?" *Lightning*, 2015 WL 4933439, at \*3. But *Daugherty,* which *Day* cited, did address that question—and the answer is: the mineral estate owner. 176 S.W. at 719. ("[T]itle to the surface may rest in one person and *title to the strata beneath the surface containing such minerals in another.*"). (emphasis added). Regardless, even ignoring this Texas Supreme Court precedent and adopting the panel's perspective, the central question would not be whether Lightning owns that earth, but whether Anadarko is interfering with Lightning's minerals, which are entrenched in that earth. Lightning's summary-judgment evidence clearly establishes interference. *CR 50–55; 95–99.*

*Day* reaffirms the precept that ownership of minerals in place includes ownership of the subsurface strata that surrounds the minerals. In essence, the panel's opinion has redefined "strata" to exclude the part of the

11

land that contains minerals. But even under the panel's theory, the only strata, if any, over which the surface owner would retain control would be that part of the strata that does not contain minerals. Anadarko's proposed wells go through strata where minerals are in place—minerals that Lightning, not the surface owner, controls. As a result, when Anadarko pierces that part of the earth, it necessarily displaces the minerals, because they are embedded in the "surrounding earth," thereby making it impossible to travel through the strata without also going through and taking Lightning's minerals. *See CR 50–55, 95–99; Supp. CR 337, 418; 2nd Supp. CR 409.*

Lightning has the right to exclude any drilling that will interfere with its operations or rights to produce its mineral estate. Anadarko cannot drill through the earth where Lightning's minerals are located without also drilling through those minerals, thereby interfering with Lightning's operations and production efforts. *CR 50–55, Supp. CR 332–33.* As a result, Anadarko's actions constitute a trespass. *Russell v. Am. Real Estate Corp.*, 89 S.W.3d 204, 208 (Tex. App.—Corpus Christi 2002, no pet.) ("Every unauthorized entry is a trespass even if no damage is done. Trespass requires only proof of interference with the right of possession.").

This is not an esoteric argument about mere nominal interference or trespass: Anadarko's planned wells will, at a minimum, prevent Lightning

from being able to drill wells in the target Eagle Ford formation due to the danger presented by Anadarko's trespassing as well as interfering by drilling its wells. *CR 419; 1st Supp. CR 331; 2nd Supp. CR 410.*

The "subterranean structures that harbor Lightning's oil and gas" are hydrocarbon-containing strata, stacked between other strata without hydrocarbons. Therefore cutting through that stack penetrates all of the strata, including those bearing hydrocarbons. *Lightning*, 2015 WL 4933439, at *1. Unlike the litigant in *Emeny v. United States*, Lightning is not trying to store offsite materials in an otherwise vacant "subterranean structure." Instead, it is protecting its own onsite minerals, which are part of "the earth," or strata, that Anadarko intends to traverse. 412 F.2d 1319, 1323 (Ct. Cl. 1969); *see also Day*, 369 S.W.3d at 828–29 (recognizing that oil and gas in place are part of the realty).

Furthermore, even if, as the panel's opinion asserts, "the surface owner controls 'the matrix of the underlying earth,'" that control can be transferred by sale or lease. *Lightning*, 2015 WL 4933439, at *1; *Stephens*, 254 S.W. at 293 (recognizing that once "the underlying strata have been severed from the surface by sale," the surface owner is no longer "an owner downward to the centre"). Such a transfer occurred here before the current surface owner acquired its interest, and that severance was recognized when Lightning acquired the mineral estate from a third party. *CR 95–99.*

13

Lightning's acquisition of the mineral estate gave it the right to exploit the minerals, including the exclusive right to use the mineral-bearing pore space and rock without interference from the surface owner or anyone else. Lightning's affidavits confirm that Anadarko's drilling operations will penetrate hydrocarbon-containing formations and interfere with Lightning's ownership of the hydrocarbon estate, and that recoverable hydrocarbons on the Cutlass Lease will be wasted by Anadarko's drilling operations. *CR 50–55, 95–99; 1ˢᵗ Supp. CR 329-30, 332, 416-18; 2ⁿᵈ Supp. CR 407, 409.*

As the panel's opinion acknowledges, under the mineral lease Lightning has not only "the right of exploring for, developing, operating, producing, ... marketing, treating and transporting oil and gas" from the leased premises, but also the right of "owning" these minerals. *Lightning*, 2015 WL 4933439, at *1. That ownership includes the right to prevent non-owners like Anadarko from traversing that part of the earth in which those minerals are embedded and displacing the minerals from their original position without the owner's permission. *See Day*, 369 S.W.3d at 831-832; *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012) (recognizing that the rights of ownership include "the right to exclusive possession" and "the right to manage use by others").

14

## II. Lightning's mineral estate is dominant over the surface estate, and Anadarko's conduct interferes with Lightning's development of its mineral lease.

According to the panel, "[t]he central question in this appeal is the nature of Lightning's interest," and whether "its mineral estate includes the right to exclude others from the estate." *Lightning*, 2015 WL 4933439, at *3. But that is not the question at all because Texas real-property law holds that ownership includes the right to exclude others. *Evanston*, 370 S.W.3d at 383. The question is not the nature of Lightning's interest, but whether that interest is dominant over or subservient to Anadarko's interest. The answer is: Lightning's mineral estate is dominant, and there is no Texas case law that would support a contrary conclusion.

Anadarko's assertion that Briscoe Ranch, as the surface-estate owner, can control the "subterranean structure" to the detriment of Lightning, as the mineral-estate owner, is contrary to the doctrine of mineral ownership in Texas, which recognizes that the mineral estate is dominant over the surface estate. *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex. 1971). To give the surface owner unconditional dominion over the mineral-bearing "subterranean structures" would change Texas oil-and-gas law by making the surface estate dominant over the mineral estate. *Id.; Tarrant County Water Control & Imp. Dist. No. One v. Haupt, Inc.*, 854 S.W.2d 909, 911 (Tex. 1993) (holding that "the mineral estate is the dominant estate").

As a general rule, the mineral owner's exclusive right to use the mineral-bearing pore space and rock is subject to the accommodation doctrine, which provides that "[a]lthough the mineral estate is the dominant estate, the rights implied in favor of the mineral estate are to be exercised with due regard for the rights of the surface owner." *Tarrant County Water Control and Imp. Dist. No. One v. Haupt*, Inc., 854 S.W.2d 909, 911 (Tex. 1993). But under Anadarko's initial five-well-pad proposal (the first of 13 pads planned by Anadarko), Lightning would not merely be accommodating the surface owner; instead, the surface use would, in effect, be condemning at least one of Lightning's wells without compensating Lightning for that loss. *Supp. CR 414-419.*

The evidence confirms that Anadarko's wells will: (1) interfere with Lightning's development of its mineral estate, including but not limited to the Cutlass A-5 well; (2) result in Lightning's inability to retrieve all the hydrocarbons underlying the Cutlass Lease; and (3) prevent Lightning from drilling its A-5 well. *Supp. CR 414-419.* In the alternative, at a minimum, a material fact question exists as to whether Anadarko's actions constitute interference with Lightning's operations, thereby precluding a summary judgment. *See* TEX. R. CIV. P. 166a(c); *Mitchell v. Baker Motel of Dallas, Inc.*, 528 S.W.2d 577, 578 (Tex. 1975) (holding that where the summary-judgment evidence "does not establish as a matter of law that there is no

16

genuine issue of fact as to one or more of the essential elements of [a] cause of action ... it will not support a summary judgment").

The panel attempts to distinguish *Chevron Oil Co. v. Howell* by asserting that the surface owner there did not give permission for a third party to drill, whereas the surface owner here "gave Anadarko its permission." *Lightning*, 2015 WL 4933439, at *5 (citing 407 S.W.2d 525, 526 (Tex. Civ. App.—Dallas 1966, writ ref'd n.r.e.)). Although the panel's opinion concedes that *Howell* precluded a third party's "drilling through one mineral estate to reach another without [the surface and mineral estate owners'] permission," the panel asserts that *Howell* "did not expressly consider whether only the surface estate owner's permission would have been sufficient." *Id.* But that claim is contrary to *Howell's* rationale that neither the surface owner nor the mineral owner had granted permission. 407 S.W.2d at 526. The consent of both was required because two separate procedures were involved: the surface-owner's consent was necessary "to come onto the surface lease to start drilling its oil well," and the mineral-owner's consent was needed "to penetrate the subsurface oil, gas and mineral lease." 407 S.W.2d 526.

In *Springer Ranch v. Jones*, this court recognized that "the physical structures and subsurface substances that the surface estate and mineral estate owners possess are inherently intertwined, at least with respect to

17

hydrocarbons." 421 S.W.3d 273, 284 (Tex. App.—San Antonio 2013, no pet.). *Springer* tempered that recognition with the observation that "if there are no minerals beneath the surface, the mineral estate owner owns the legal fiction of an estate that is nothing." *Id.* (citing *Dunn–McCampbell*, 630 F.3d at 441). Here, however, it is undisputed that there *are* minerals beneath the surface. *CR 50–55, 95–99; 1ˢᵗ Supp. CR 329-30, 332, 416-18; 2ⁿᵈ Supp. CR 407, 409.* Therefore, these hydrocarbons are real, not fictional, and are intertwined with the subsurface strata.

*Emeny v. United States*, on which *Springer* relied, is also "readily distinguishable" because it "deals only with the ownership of a geologic formation having value as a storage facility, and not an extractable commercially valuable resource." *Geothermal Kinetics, Inc. v. Union Oil Co.*, 141 Cal. Rptr. 879, 882 (Cal. Ct. App. 1977) (citing 412 F.2d 1319, 1323 (Ct. Cl. 1969)). Furthermore, *Emeny* involved the proposed storage of others' minerals, not the mineral estate owner's. 412 F.2d at 1323.

"[U]nlike *Villarreal*," says the panel, "there is no evidence that Anadarko conducted a seismographic survey of Lightning's mineral estate." *Lightning,* 2015 WL 4933439, at *4. But even without a seismographic survey Anadarko will gather information about Lightning's mineral estate as Anadarko drills through the several oil-and-gas-producing horizons between the surface and the point at which Anadarko's wells cross the lease

18

line into its mineral estate under the Chaparral WMA. *CR 50–55, 95–99; 1st Supp. CR 331-32, 418; 2nd Supp. CR 408-09.* Furthermore, Anadarko's drilling through those horizons will necessarily result in incidental takings of Lightning's minerals. *CR 50–55, 95–99; 1st Supp. CR 331–32, 418; 2nd Supp. CR 408–09.*

It is undisputed that Anadarko's well bore will contact hydrocarbons on the Cutlass Lease in the Olmos, San Miguel, Wilcox, and Austin Chalk formations and that these hydrocarbons will be reflected in mud-logging by Anadarko when they are brought to the surface. *1st Supp CR 332.* Furthermore, Anadarko's present five-well plan will prevent Lightning from drilling its Cutlass A-5 well, which will result in its being unable to produce recoverable hydrocarbons in the Cutlass Lease. *CR 687-693.*

The panel's opinion asserts that "ownership of the hydrocarbons does not give the mineral owner ownership of the earth surrounding those substances." *Lightning,* 2015 WL 4933439, at *5 (quoting *Springer Ranch,* 421 S.W.3d at 282) (citing *Emeny,* 412 F.2d at 1323). But even hypothetically accepting that theory, the mineral-estate owner would still have an exclusive right or easement in the surface owner's earth surrounding those substances during the lease term. That would include the right to enjoin operations that would interfere with Lightning's efforts to produce the minerals in place. *Day,* 369 S.W.3d at 831–32.

19

In its analysis of *Humble v. West*, the panel recites that "the Wests—who retained the now-severed mineral estate—no longer owned the underground reservoir because 'the surface of the leased lands remaining as the property of the [surface estate owners] included the geological structures beneath the surface.'" *Lightning,* 2015 WL 4933439, at *5. But West did not retain the mineral estate; it owned only a non-corporeal royalty interest. 508 S.W.2d at 815. Therefore, any reference to Humble's owning the geological structures beneath the earth was as the owner of both the surface and mineral estates, not just the surface estate, as the panel's opinion mis-presumes. *Lightning,* 2015 WL 4933439, at *5. Unlike the Wests, Lightning owns the corporeal mineral estate.

If, as here, property is "in the ground," it cannot reasonably be argued that the owner of that property does not have exclusive access to that ground. Instead, "[f]or the purpose of making the exploration and producing all the oil, gas, and other minerals that might be within the ground, and the erection of all structures necessary thereto, as well as their storing and transportation, the possession of the land itself is likewise granted ..." *Daugherty*, 176 S.W. at 718. Therefore, even if Briscoe could give permission to drill through the earth under its surface, Anadarko does not have the right to drill through Lightning's minerals. The panel's opinion purports to erase that right by discarding the doctrine of the dominant

20

mineral estate as well as the mineral-interest owner's exclusive right to the strata in which the minerals are present.

## III. Anadarko trespassed on Lightning's mineral estate.

The panel correctly recites that "a trespass is 'an unauthorized entry upon the land of another.'" *Lightning*, 2015 WL 4933439, at *3 (quoting *Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424 (Tex. 2015)). Lightning's mineral estate is an interest in land. *Harris v. Currie*, 176 S.W.2d 302, 305 (Tex. 1943). Therefore, Anadarko is not authorized to pass through Lightning's minerals without Lightning's permission. *See Salazar v. Sanders*, 440 S.W.3d 863, 876 (Tex. App.—El Paso 2013, pet. denied).

In the panel's view, Lightning does not own the earth in which the minerals are embedded. *Lightning*, 2015 WL 4933439, at *3. But Lightning does not need to own this mineral-bearing earth to prevent Anadarko from trespassing. It is enough that Lightning has "a legal right to exclude others from the property." *See Lightning*, 2015 WL 4933439, at *3 (citing *Envtl.*, 457 S.W.3d at 424, and *Cain v. Fontana*, 423 S.W.2d 134, 137 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.)). Therefore, regardless of the distinction that the panel makes between the minerals and the earth in which they are embedded, Lightning has the right to prevent Anadarko

21

from going through that earth because Anadarko cannot do so without trespassing through Lightning's minerals, which are encased in that land.

"Anadarko has [not] bottomed or opened a well within the Cutlass Lease," says the panel. *Lightning*, 2015 WL 4933439, at *4. But Anadarko does not have to bottom or open a well to interfere with Lightning's activities in the strata that hold the minerals Lightning owns by virtue of the lease. Anadarko's drilling path will take it through not just any strata of earth, but strata in which Lightning's minerals are embedded. *See CR 50–55, 95–99; 1st Supp. CR 330, 332, 416; 2nd Supp. CR 407, 409.* In drilling through these mineral-bound formations, Anadarko will necessarily displace hydrocarbons and will waste minerals that are a part of this strata as Anadarko goes through Lightning's land without Lightning's permission. *CR 50–55, 95–99; 1st Supp. CR 330, 417; 2nd Supp. CR 411.* That is a trespass. *See Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 671 (Tex. 1999).

## PRAYER

For these reasons, Lightning asks this court to:

- grant this motion for en banc reconsideration;

- withdraw the court's original opinion;

- issue a new opinion reversing the trial court's judgment and rendering judgment in favor of Lightning;

22

- in the alternative, issue a new opinion reversing the trial court's judgment and remanding this case for trial; and

- grant Lightning all other relief to which it is entitled.

Respectfully submitted,

/s/ *Bruce K. Spindler*
BRUCE K. SPINDLER
State Bar No. 18947050
Email: bspindler@langleybanack.com
ROBINSON C. RAMSEY
State Bar No. 16523700
Email: rramsey@langleybanack.com
JOHN W. PETRY
State Bar No. 15854000
Email: jpetry@langleybanack.com
STEPHEN J. AHL
Email: sahl@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Suite 900
745 East Mulberry Avenue
San Antonio, Texas 78212
Telephone: (210) 736-6600
Telecopier: (210) 735-6889

ATTORNEYS FOR APPELLANT
LIGHTNING OIL CO.

## CERTIFICATE OF COMPLIANCE

Appellant Lightning Oil Company certifies that the number of words in this motion, including its headings, footnotes, and quotations, is: **4194**.

/s/ *Bruce K. Spindler*
BRUCE K. SPINDLER

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been sent to counsel listed below on September 3, 2015:

David Palmer
MOSES, PALMER & HOWELL, LLP
309 W. 7th Street, Suite 815
Fort Worth, TX 76102
Email: dpalmer@mph-law.com
Telephone: 817.255.9100
Telecopier: 817.255.9199

Donato D. Ramos
LAW OFFICES OF DONATO D. RAMOS, LLP
6721 McPherson Road
P. O. Box 452009
Laredo, Texas 78045
donatoramosjr@ddrlex.com
mrodriguez@ddrlex.com
Telephone: 956.722.9909
Telecopier: 956.727-5884

/s/ *Bruce K. Spindler*
BRUCE K. SPINDLER

24